People's Bank in Liquidation *et al. v.* Pennington.*

(Division B. Jan. 3, 1925.)

[102 So. 386.   No. 24479].

1. Appeal and Error. *Chancery court, after reversal and remand, may allow amendments which it had power to allow before rendition of decree.*

When a decree of a chancery court appealed from is by the supreme court reversed and remanded, such chancery court has full power to allow any amendments to be made to the pleadings, which it had power to allow before the decree appealed from was rendered.

2. Appeal and Error. *Remanding of case generally is for trial de novo.*

The remanding of a case generally to the trial court is for the purpose of having it tried *de novo.*

3. Equity. *Complainant may dismiss bill prior to submission of cause on merits.*

The general rule is that a complainant has the right to dismiss his bill at any time before the cause is submitted to the chancellor for a decision upon its merits.

4. Equity. *Complainant has no right to dismiss bill where defendant has acquired rights by filing of bill or by virtue of pleadings.*

To the above-stated rule there is an exception, namely, a complainhas not this right when a defendant has secured some rights by the filing of the bill, which would be destroyed by its dismissal, or where a defendant has acquired some rights by virtue of the pleadings in the cause which entitled him to successfully object to the dismissal of the bill.

5. Appeal and Error. *Complainants held entitled to dismiss bill after reversal and remand.*

Facts examined in this case, and complainants *held* to have the right to dismiss their bill after the cause had been reversed and remanded in the supreme court.

---

*Headnotes 1. Appeal and Error, 4 C. J., section 3278; 2. Appeal and Error, 4 C. J., section 3299; 3. Equity, 21 C. J., section 798; 4. Equity, 21 C. J., section 798; 5. Appeal and Error, 4 C. J., section 3287.

(Division B. March 9, 1925.)

[103 So. 144. No. 23479.]

ON SUGGESTION OF ERROR.

1. EQUITY. *Complainant may not dismiss bill without prejudice without consent of defendant, where valuable rights have accrued during litigation.*

A complainant in equity is not entitled to dismiss a bill without prejudice where the cause has proceeded to a hearing and judgment of a court obtained adjudicating a right to the defendant whether such decree be interlocutory or final. After a defendant has been put to the trouble of making his defense, if in the progress of the case rights have accrued to him which are valuable to him and of which it would be unfair and unjust to deprive him, the bill may not be dismissed without prejudice against his consent.

2. EQUITY. *When complainant may dismiss bill without prejudice, stated.*

Under section 802, Code of 1906, Hemingway's Code, section 590, the complainant may dismiss his bill before a submission of the cause to the court, provided there has not been a change in the *status* and rights of the parties after the suit was begun which would be destructive of the rights of the defendant; but, after the cause has been submitted to the court for hearing and judgment of the court obtained, the bill cannot be dismissed without prejudice without the consent of the parties interested in the suit.

*Headnotes 1. Equity, 21 C. J., section 815; 2. Equity, 21 C. J., section 798.

APPEAL from chancery court, Tallahatchie county.

HON. C. L. LOMAX, Chancellor.

Bill by the People's Bank in Liquidation and others against Ben T. Pennington. From order denying their motions to dismiss bill, complainants appeal. Reversed in part and affirmed in part.

*Hays, Stingily & Whitten,* for appellants.

The question for determination on this appeal is: Had the complainant the right to dismiss the suit, or had the chancellor discretion in the matter? "It seems to be argued that the chancellor is vested with discretionary powers when he is called upon to consider an application of complainant to discontinue his action. We are unable to indorse this view of the law. Section 802, Code of 1906, gives to every plaintiff the absolute right, 'To suffer a non-suit,' if he elects to do so, 'before the jury retire to consider its verdict.' This section of the Code is found in chapter 20, Circuit Courts, section 687. The right of a complainant to dismiss the bill without prejudice, to discontinue his suit, or to suffer a non-suit, are 'not restricted by their nature or by expressed provision to particular courts.' " *Adams* v. *Commercial Co.,* 113 Miss. 608.

In *Northern* v. *Scruggs,* 118 Miss. 353, the court in nowise attempted to change the express rule laid down by statute, but said only, that, where by the filing of the bill, the defendant had acquired a valuable right against the complainant, the complainant had no absolute right to dismiss. In addition there was in that case the right of minors to be protected. There are, too, here rights of minors to be protected, but these rights are against the defendant. In this case the defendant, Pennington, certainly has acquired no greater right as against the complainant bank than to have entered a decree dismissing the bill. The bank's bill which is to be dismissed admits nothing of advantage to the defendant Pennington. Its filing gives him no right he would not have if the bill had not been filed. The only advantage he could acquire in the matter, in so far as the bank is concerned, in this particular controversy now before the court, is solely between him and the bank. The dismissal of the bill accomplishes that.

Rights referred to are rights of property, not purely adjective rights. In this case the defendant, Pennington loses no right, but, on the other hand, gets rid of an adversary. And, as between himself and the complainant bank, gains all he ever had to gain. But they say, 'If the People's Bank is allowed to withdraw, Pennington cannot testify against the estate of H. R. Jenkins, deceased.' That is a bridge to be crossed when we get to it. The admission of testimony in another hearing of this cause, will be governed by section 1577, Hemingway's Code, if the question arises. The complainant, People's Bank and defendant, Ben Pennington, as to the right of either against the other, are not affected thereby. The only parties to be affected are, in so far as the original bill is concerned, Ben Pennington and his co-defendants, the heirs at law of H. R. Jenkins, deceased. Certainly the "right" referred to in the exception is not a right, adjective or substantive, against a third party, a co-defendant or any one else except the complainant.. What right, then, has the defendant, Pennington, to lose from the exercise by. the complainant of a statutory right?

There is nothing in this case to make it even remotely analogous to the Scruggs case, much less parallel, and the court we submit, went far enough in that case.

*Wells, Stevens & Jones* and *H. C. Mounger,* for appellee.

This is the second appearance of this cause. The court will remember that there were three deeds of trust executed by H. R. Jenkins and his wife, Elizabeth Jenkins, on the plantation involved in this suit. Pennington held the first deed of trust to secure an indebtedness of forty-five thousand dollars, the same being the consideration due Pennington under his deed of conveyance to J. W. Cutrer and A. H. Stephens. The

People's Bank held a second deed of trust to secure an indebtedness to the Bank of twenty thousand dollars. J. W. and G. C. Jenkins held a third deed of trust to indemnify them as sureties for their father, H. R. Jenkins. The case was originally tried on original bill, answer of H. R. and Elizabeth Jenkins, answer and cross-bill of Pennington, and answer to said cross bill, and proof developed on the first trial of this case. On appeal to this court the decree of the chancellor was reversed and in an opinion by the court *en banc,* Pennington was held to have a first lien as contended for him in his answer and Cross-bill, the People's Bank was adjudged to hold a second lien, while J. W. and G. C. Jenkins, as sureties, came third.

There was only one question which this court did not determine on the first appeal, and that was whether Pennington's note, under the evidence, matured in 1921 or was to mature in 1926.

The opinion on the first appeal was on the pleadings and proof, or, in other words, after a final submission of the case both to the lower court and to this court on appeal. Presumably all evidence which either party to this litigation could introduce, had been introduced at the final trial of the case. The court heard all the evidence and considered all of the law. The opinion of the court reversing and remanding the case conclusively shows that this court reached two important results on the whole record. First, that Pennington had not altered his trust deed for forty-five thousand dollars, and, secondly, that this valid trust deed was a first lien and had priority over the deed of trust to the People's Bank and the indemnifying deed of trust in favor of J. W. and G. C. Jenkins. The only purpose for remanding the case for further proceedings was to give the learned chancellor the right to do that which it had not become necessary for him to do, to-wit: Determine the due date or maturity of Pennington's note and trust deed. After

137 Miss.—42.

the cause had been remanded, H. R. Jenkins, the principal maker on the promissory notes and trust deeds and an original defendant in the cause, died intestate, leaving his wife and his children and several grandchildren as his heirs-at-law. There was an application to revive the case against the heirs-at-law of H. R. Jenkins, both upon the original bill and upon the crossbill of Pennington.

The cross-bill of the Jenkins family was interposed by J. A. May, guardian *ad litem,* for the minors, and by solicitors for all of the heirs of H. R. Jenkins, deceased, but the prayer of the cross-bill is purely defensive, and in fact is not a cross action at all. There was a motion by Pennington to strike this cross-bill from the file. The causes for the motion are set out. This motion was, by the court, overruled.

The record shows a consistent and strenuous effort on the part of both the Bank and every member of the Jenkins family to get from under the prior decision in this case, and to shift the burden of proof to Pennington, and to that end to dismiss this whole case out of court and leave the Jenkins family in possession of the plantation, and force Pennington to file a new suit, and be embarrassed in the prosecution of it on account of the death of H. R. Jenkins. We demanded a trial on the merits, and objected to an appeal, but after the court granted appellants an appeal we thought the equities of the case justified a cross appeal on behalf of Pennington, complaining of the ruling of the court in refusing to strike the cross-bill of the Jenkins heirs, in holding that this case was to be tried anew, unaffected by any law of the case, in overruling the counter-motion of appellee for a final decree against appellants on the original pleadings, and the record, and the opinion of this court, except as to the one issue of fact for the trial of which the case was originally remanded by this court, and the ruling of the court permitting the heirs-at-law

of H. R. Jenkins, deceased, to amend their answer and cross-bill, and in refusing to make a final disposition of this cause, and likewise the ruling of the court in overruling the motion of appellee to appoint a receiver to take charge of the property pending appeal. See cross-assignment of errors on file in this case.

The case was remanded for trial as to one, and only one, issue of fact. The court should have proceeded to a determination of that issue. The attention of the court was diverted from the single issue in the case on account of the unfortunate death of H. R. Jenkins, and the so-called bills of revivor. The only purpose, and the only justification, for filing any new pleadings whatever was to revive the suit. The supreme court had decided that the bank's trust deed was subordinate to Pennington's. It has, also, decided that the letter written by the bank's own cashier was binding and conclusive on the bank. Pennington is reminded to ''beware of Greeks bearing gifts,'' and when all of the original complainants come in and offer to dismiss their suit Pennington might have been overwhelmed with this display of generosity were he not reminded of some of the technical difficulties in the way, and the fact that if this case is dismissed altogether he is left out of possession, with no opportunity to claim in this suit compensation for the use and occupation of the lands pending litigation, and that all of the parties would be left in the same attitude as if the case had not been filed, and furthermore he would lose the victory which he has won, and be embarrassed in several ways in the further assertion of his rights.

The motion to dismiss the bill was properly overruled. Appellants cite and rely upon *Adams* v. *Commercial Co.,* 113 Miss. 608. The case at bar is easily differentiated. In that case, as stated by the court: ''Nothing was done by either side; no testimony was taken, and the case was not heard by the chancellor in vacation. It will be seen that both the complainant and the defendant elected to

do nothing toward the hearing in vacation.'' In the case at bar this cause had been fully tried on pleadings and proof, and the opinion of this court reversing the case becomes the law of the case, and in the main settles and adjudicates the questions at issue. It will be further observed that the court in the *Adams case, supra*, stated: ''The only limitation of the rule is applied to cases wherein the defendant has secured some right by the filing of the bill which would be destroyed by the dismissal of the bill.'' The case at bar comes squarely within this exception or limitation. Here Pennington has secured a right. This court has expressly adjudicated that he is innocent of any alteration of the promissory note for forty-five thousand dollars, and, secondly, the court has expressly adjudicated that his trust deed has priority over the other trust deeds of the People's Bank, and the two Jenkins sons. These are the main, fundamental issues in the case.

*Northern* v. *Scruggs*, 118 Miss. 353, is directly in point. This is the case referred to by the learned chancellor, and followed by him to a large extent in overruling the motion to dismiss. It, also, was a case which fell within the limitations stated by this court in the Adams case. See, also, *State* v. *Hemingway*, 69 Miss. 491, 10 So. 576; *Cooper* v. *Lewis*, 2 Phill. Chan. 181; Daniell Ch. Pl. & Pr., 5 Ed. p. 755; *Pullman Palace Car Co.* v. *Central Transportation Co.*, 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108; *Stevens* v. *Railroads* (C. C.), 4 Fed. 97, 16 Cyc. 460, and cases there listed in the footnotes; *McCarren* v. *Coogan*, 50 N. J. Eq. 268, 24 Atl. 1033, 21 C. J. 631, 632, 18 C. J. 1159. In the case of *Chicago & A. R. R. Co.* v. *Rolling Mill Co.*, 109 U. S. —, 27 L. Ed. 1081, the supreme court of the United States said: ''After a decree, whether final or interlocutory, has been made, by which the rights of a party defendant have been adjudicated, or such proceedings have been taken as entitle the defendant to a decree, the complainant will not be allowed to dismiss

his bill without the consent of defendant.'' Citing Daniell's Chancery Practice (5 Am. Ed.), pages 793, 794, Ibid, *Cooper* v. *Lewis, supra; Bank* v. *Rose,* 1 Rich. Eq. (S. C.) 294; *Conner* v. *Drake,* 1 Ohio 170; *Watt* v. *Crawford,* 11 Paige 472; *Gilbert* v. *Howles,* 1 Ch. Cas. 40; *Bluck* v. *Colnaghi,* 9 Sim. Ch. 411; *Laskley* v. *Hogg,* 11 Ves. Jr. 602; *Booth* v. *Leycester,* 1 Keen, 255; *Biscoe* v. *Brett,* 2 Ves. & B. 377; *Collins* v. *Greaves,* 5 Hare 596; *Gregory* v. *Spencer,* 11 Beav. 143; *Carrington* v. *Holly,* 1 Dick. 280; Anon, 11 Ves. Jr. 169; *Cozzens* v. *Sisson,* 5 R. I. 489; *Updike* v. *Doyle,* 7 R. I. 461; *Atlas Bank* v. *Nahant Bank,* 23 Pick. 491; *Bethia* v. *McKay,* Cheve's Eq. (S. C.) 96; *Sayer's Appeal,* 79 Pa. 428; *Seymour* v. *Jerome,* Walk. (Mich.) ch. 356.

In the case at bar Pennington had a cross-bill upon which he is entitled to affirmative relief, and the opinion of this court shows that he is entitled to the relief prayed for in his cross-bill. In the case of *Georgia Pine Turpentine Co.* v. *Bilfinger,* 129 Fed. 132, the court ruled that the complainant in an infringement suit wherein the preliminary injunction had issued, cannot dismiss without prejudice after proofs taken showing no infringement. In *Washington Investment Association* v. *Sanders,* 24 Wash. 328, 64 Pac. 548, the court held that the plaintiff cannot dismiss where counterclaim demanded affirmative relief. In *Hollingsworth & Vose Co.* v. *Foxboro Water Supply District,* 171 Mass. 451, the court denied the right to dismiss where a new trial had been granted.

This court quoted in the opinion rendered in *Northern* v. *Scruggs,* from the older case of *State* v. *Hemingway.* 69 Miss. 491. In that case, a mortgage executed by the principal for the indemnity of his sureties was attacked by the state in a bill which charged that Hemingway was indebted to the state. The purpose of the bill was to take the security from the sureties of Hemingway and apply it toward the liquidation of his indebtedness to the state. The case was by consent set down for final hearing. This

case is directly in point and conclusive on the question at issue here about the right of the complainants to dismiss and leave Pennington with a fruitless victory. In the Hemingway case, the court had made a decree ''adjudicating the chief matter of controversy.'' In the case at bar this court has rendered an opinion adjudicating the chief matter incontroversy. In the Hemingway case ''the attack made by the bill on the conveyance had failed.'' In the case at bar the attack made on Pennington's trust deed has failed. In the Hemingway case ''testimony by depositions and agreement had been taken and filed.'' In the case at bar full proof had been taken on all of the pleadings, and the cause had been remanded for a new trial as to one issue. All of the authorities agree that an original bill cannot be dismissed without prejudice when there is a cross-bill upon which the defendant is entitled to equitable and affirmative relief. 9 R. C. L., par. 11.

Pennington has acquired rights in this case against both the original complainant, and against his co-defendants, H. R. and Elizabeth Jenkins. In the Missouri case of *State ex rel. Hahn Bakery Co.* v. *Anderson,* 190 S. W. 857, the court said: ''In an early case upon a point measurably analogous, it was said by this court: 'No *nolle prosequi* or dismissal of a party ought to be allowed when it will produce any derangement in the rights of the defendants, deprive them of a legal defense, or subject them to increased difficulties or liabilities.' *Browning* v. *Chrisman,* 30 Mo. 357.''

''The principle involved in this holding is that invoked in all jurisdictions. 14 Cyc. 406, and cases cited; 6 Enc. Pl. & Pr. 842; 9 R. C. L. 194. And this general rule is thus stated by Cyc. Loc. Cit. supra: 'While a plaintiff may dismiss, any claim where such dismissal will not prejudicially affect the interest of defendant, he will not be permitted to dismiss, to discontinue, or to take a nonsuit, when by so doing he will obtain an average and de-

fendant will be prejudiced or oppressed, or deprived of any just defense.' ''

"If verdict for defendant has been set aside and a new trial granted on motion of the plaintiff, the latter cannot dismiss the matter without prejudice since the substantial rights of the defendant are thereby affected, being the destruction of the right to protect the verdict rendered in his favor.''   *Floody* v. *Great Northern R. Co.,* 104 Minn. 517, 116 N. W. 107.

The Florida court has gone into this subject rather exhaustively in the case of *Long* v. *Anderson,* 37 So. 216. The Florida opinion contains a long list of strong authorities on the subject. It is rather an exhaustive brief in itself.   See, also, 14 Cyc. 406, 407 and 409.

Mr. Justice Peckman of the supreme court of the United States discusses the question in apt language in *Pullman Palace Car Co.* v. *Central Transportation Co., supra.* The following decision of the supreme court of the United States was referred to with approval in the following cases wherein the respective courts refused to dismiss the suit after the cause had been referred to a master, to-wit:   *Kyle* v. *Reynolds,* 211 Mass. 112, 97 N. E. 615; *Smith* v. *Carlisle,* 228 Fed. 667; *In Re Brown,* 228 Fed. 536.

In the following cases the circuit court of appeals ruled that the trial court had discretion in the premises, and no matter whether the ruling was in favor of dismissing the bill or retaining the bill, the appellate court would not reverse.   *Lawrence-Wards-Island Realty Co.* v. *U. S.,* 209 Fed. 203, 126 C. C. A. 211;   *Penn Phonograph Co.* v. *Columbia Phonograph Co.,* 132 Fed. 809, 66 C. C. A. 127.

In 6 Enc. Pl. &. Pr. 843, the text reads:   "A plaintiff cannot terminate his suit as of right where it may prejudice the rights of the defendant.''   In *Gage* v. *Bailey,* 119 Ill. 539:   "Where a decree is reversed on the merits and the cause remanded for further pro-

ceedings not inconsistent with the opinion filed, the trial court must dismiss the bill on the merits and it will be error to allow the complainant to dismiss his bill without prejudice." The following cases are authority for the proposition that where there is a reversal with instructions to proceed "in conformity with the opinion" the suit cannot be dismissed without prejudice. *Wadhams* v. *Gay,* 83 Ill. 250; *Newberry* v. *Blatchford,* 106 Ill. 589.

The Ohio court strikes the nail on the head in the following very just declaration: "After a defendant has been put to trouble and expense in making his defense, if, in the progress of the case, rights have been manifested that he is entitled to claim, and which are valuable to him, it would be unjust to deprive him of them merely because the complainant might come to the conclusion that it would be to his interest to dismiss his bill. Such a method of proceeding would be trifling with the court as well as with the rights of the defendants." *Connor* v. *Drake,* 1 Ohio 170. To like effect are *Bishop* v. *Pardee,* 35 Conn. 4; *Turner* v. *Turner,* 1 Salk. 179; *Lewis* v. *Cooper,* 16 L. J. Ch. (N. S.) 265.

In reference to the right to dismiss when there is a cross-bill see Pleading and Practice, p. 848; *Stephenson* v. *Diamond Fuel Co.,* 190 N. Y. Supp. 379; *Willette* v. *Brown,* 190 N. Y. Supp. 606; *Ex Parte Welsh* (N. J. Ch.), 116 Atl. 23; *Frear* v. *Lewis,* 195 N. Y. Supp. 3; *Powers* v. *De Cesare,* 193 N. Y. Supp. 294; *State* v. *Hastings* (Wash.), 207 Pac. 23. A very suggestive case was presented to the Kansas court in *Holmes* v. *Holt,* 90 Kan. 774, 136 Pac. 246, wherein there was a suit to have two deeds adjudged mortgages and for an accounting. The cause proceeded to the point where a decree was entered declaring the deeds to be mortgages and the hearing on the accounting was continued. The complainant then moved to dismiss the action for accounting and the court ruled that the defendants had

rights which should be determined in the action and in pursuance of the decree adjudging the two deed mortgages. In the case at bar, this court has ruled that Pennington's trust deed is valid and has priority, and in that respect the two cases are somewhat similar.

Whenever a defendant is wrongfully dispossessed of his land by legal process, he is entitled to a writ of restitution and an inquisition of damages in the action, of which the plaintiff is not permitted to deprive him by taking a nonsuit." *Land* v. *Morton,* 81 N. C. 38. "Leave to discontinue should never be given where it would deprive any defendant of a just defense." *Keithley* v. *May,* 29 Mo. 507. "The filing of an answer holding defendant entitled to affirmative relief with a prayer for such relief will preclude plaintiff from dismissing the action on his own motion, though the answer is a complete answer to the complaint." *Griffin* v. *Jorgenson,* 22 Minn. 92. "Where both parties are actors and each has an interest in taking a verdict, the court will not allow a discontinuance against objections." *Estell's Executors* v. *Franklin,* 29 N. J. L. (5 Dutch) 264. "After the filing of a cross complaint, the plaintiff cannot dismiss without prejudice." *Pickett* v. *Ferguson,* 45 Ark. 177, 55 Am. Rep. 545.

A suggestive case is the Mississippi case of *Trust Co.* v. *Fitzpatrick,* 74 Miss. 347, 14 So. 270. There was an injunction and a motion to dissolve with a suggestion of damages. The complainant without the consent of the defendant dismissed his bill. The defendant thereupon successfully moved the court to reinstate to the end that damages might be decreed. It takes a special order of the court to dismiss an equity suit without prejudice. The well-known rule in equity is that a bill, after answer filed, must be dismissed on the merits, and if it is dismissed it will have the effect, unless otherwise ordered, of a decree on the merits, and the decree may be presented in bar of another suit. *Phillips* v. *Wormley,*

58 Miss. 398. This case, together with the subsequent cases of *State* v. *Hemingway, supra,* and *Northern* v. *Scruggs, supra,* shows conclusively that the ruling here complained of was correct.

Section 802, Code of 1906 (Sec. 590, Hemingway's Code), and the case of *Adams* v. *Commercial Co.,* 113 Miss. 608, relied on by appellants. The only authority cited and relied upon in the brief on behalf of appellants, is the Adams case. We have already quoted an extract from this opinion which states the limitation of the rule, that is, "where the defendant has secured some right by the filing of the bill which would be destroyed by the dismissal of the bill." Our court pointed out in the Adams case that where the defendant has obtained a right— "then it is not a matter of discretion with the chancellor, it is the rights of the defendant which controls." The court, also, said: "In equity courts the right ceases after the cause has been submitted to the chancellor." The court in the Adams case referred to our statutes and called attention to the fact that while there is no direct statute on the subject and that "probably the statute was not needed in equity practice," and reached the conclusion that under the general language of section 687, Code of 1906, the same rule applicable to law courts should be the rule as nearly as possible in equity courts. Conceding for argument that the statute applies with the same force and effect in equity cases as it does in a law case, we direct attention to the language of the statute itself that a plaintiff desiring to suffer a nonsuit "shall be barred therefrom unless he does so before the jury retire to consider of its verdict." It occurs to us that the purpose of the statute was more to prevent a dismissal than to grant the right of dismissal. It fixed a stage in the proceeding beyond which the plaintiff would absolutely be barred from dismissing his suit without prejudice. The decision in the Adams case went as far as it possibly could; but, even giving the decision an extreme applica-

tion, it is no authority for the dismissal of the bill here for several reasons.

In the case at bar, Pennington has acquired "some right by the filing of the bill which would be destroyed by the dismissal of the bill." In the case at bar, "the right ceases after the cause has been submitted to the chancellor." This cause was submitted to the chancellor on pleadings and proof and a final hearing was had. In *Haines* v. *Haines,* 98 Miss. 830, our court, by the present Chief Justice, said: "The former judgment of this court is *res adjudicata* of the case then presented." In *Wisconsin Lumber Co.* v. *State,* 97 Miss. 571, this court, speaking through Mr. Justice Anderson, overruled an erroneous decision but declared that the former opinion had established a rule of property which should be adhered to. See, also, *State* v. *Woodruff,* 81 Miss. 456, 33 So. 78; *Nutt* v. *Knut,* 84 Miss. 465, 33 So. 689; *George* v. *Caldwell,* 54 So. 316; *Chapman* v. *White Sewing Machine Co.,* 78 Miss. 438, 28 So. 735; Wells on Res Adjudicata, sec. 613; Van Fleet on "Former Adjudication;" *Kraus* v. *Potts,* 53 Okla. 379, 156 Pac. 1162; 5 A. L. R. 1213; 2 R. C. L. 187.

It may be said that *Brewer* v. *Browning,* 115 Miss. 358, 76 So. 267, has upset to some extent the "law of the case" doctrine in Mississippi. But the opinion of Judge Etheridge in that case has simply enforced an exception to the rule, to the effect that the appellate court having made an error in its first decision might "correct its former decision where it is manifestly wrong." It should be observed, also, that the first appeal in the Brewer case "was from an interlocutory decree and not from a final decree."

It will be a manifest injustice to permit the original complainants to invoke an adverse ruling after prolonged litigation and on full proof and final hearing and a litigious appeal to the supreme court, and then wipe out the appeal altogether and leave Pennington embarrassed in the assertion of his legal rights.

Embarrassment in the competency of witnesses.  It is our further contention that if the complainants were permitted to dismiss their original bill the situation of the parties would now be different and Pennington might become embarrassed in proving his substantial rights in another suit.  Under the ruling in *Strickland* v. *Hudson,* 55 Miss. 236, the deposition of H. R. Jenkins could be introduced in the present suit.  If the complainants elect to introduce this deposition, then that part of our statute prohibiting a witness from testifying in support of his own claim or claims against the estate of deceased person, is removed and they would be permitted in this cause to testify again on any retrial of the case.  This is also the rule of our court in *Drewry* v. *Hopper,* 77 Miss. 744.

If the court should permit the original bill in this case to be dismissed without prejudice, then Mr. Pennington might be compelled to file a new suit, and the parties would attempt at least to provoke other issues, and the competence of the deposition of H. R. Jenkins would become involved in grave doubt, and, therefore, the competency of Pennington's testimony in another suit might become beclouded or else in doubt or even excluded.  It is manifest, therefore, that the purpose to dismiss the bill here is not only to get from under the law in the case, but to hinder, delay, and embarrass Pennington in the assertion of his legal rights.

Embarrassment on account of delay and otherwise. Pennington would be injured and his rights prejudiced by the dismissal of the bill because if his trust deed matured in 1921, the foreclosure under that trust deed was and is legal, and he is now the owner of the premises in dispute.  By his cross-bill he prays for possession and is entitled to that possession in this very proceeding and to an accounting for rents, or for the use and occupation. If this suit is dismissed, then Pennington will be injured by enlarged expenses both in the way of possible court costs and attorneys' fees.  He would be injured by de-

layed justice.  Justice delayed is justice denied.  The plantation is running down; the labor question has become acute, and Pennington has a right to a speedy possession on this account.

Embarrassment on account of the competency of the Rowland letter.  The learned chancellor has already surmised the trouble about the competency of the Rowland letter, if this suit is dismissed without prejudice.  We call attention to the fact that Pennington will be involved in a controversy with the other parties as to the competency of that letter.  This court, in the former opinion, said: "The whole matter was in the hands of Mr. Rowland.  His letter to Mr. Pennington speaks not only his understanding of the transaction, but the Bank's understanding of it."  We are entitled to have the force and effect of that letter finally declared and adjudicated in this suit without embarrassment as to the change of parties or any other fortuitous event.  The Bank provoked this litigation, and on the case made by the Bank it should stand or fall.

Cross Assignment of Errors.  The first cross assignment of error is, "The court erred in overruling the motion of appellee to strike from the files the cross bill as amended by Elizabeth Jenkins, et al., as shown by the written motion and the decree overruling the motion."  This cross bill is in no sense a cross action whatsoever.  It was filed by the heirs-at-law of H. R. Jenkins and asks the same relief as the original bill sought and asked for.  It is elementary that a cross bill is unnecessary unless some independent and affirmative relief be necessary and also that there is no such thing as a cross bill to a cross bill.  The new matter must be germane to the original bill.  H. R. Jenkins in his lifetime, and his heirs since his death, do not dispute the validity of the People's Bank trust deed.  H. R. Jenkins did not file any cross bill in his lifetime and none was necessary.  He was simply disputing Pennington's right to recover, and lost.  On the

one issue for which the case is remanded, no cross bill on the part of the Jenkins heirs is necessary, and the pleading submitted as a cross bill is nothing in the world but an answer, pure and simple. *Withers* v. *Bank,* 104 Miss. 681; *Buckingham* v. *Wesson,* 54 Miss. 526; *Stansel* v. *Hahn,* 96 Miss. 616; *Gilmer* v. *Felhour,* 45 Miss. 627; *District Grand Lodge I. O. O. F.* v. *Leonard,* 92 Miss. 777.

The heirs stand in privity with their ancestor and are concluded by the former adjudication. The only purpose of this restatement of the answer, and the only purpose in attempting to call it a cross bill is to try to get from under the prior holding of this court and inveigle the lower court into the belief that he is dealing with a different kind of case. It is only necessary for this court to look at the prayer of the alleged cross bill to see that it is not a cross action at all. Furthermore, it is presented in part by J. W. and G. C. Jenkins who are original complainants with the People's Bank. We never heard of parties being both complainants and also defendants and cross complainants. This document was filed without leave of the court and for that reason, as well as the foregoing reasons, a motion to strike was submitted. The court erred in overruling the motion.

Cross Assignment No. 2. We refer the court to the cross assignment of errors on file as to this assignment. It complains of the action of the trial court in overruling the counter-motion of Pennington for a final decree against appellants on the original pleadings and the record, including the opinion of the supreme court, except as to the one issue of fact as to the maturity of appellee's promissory note and trust deed. This motion was made in response to the written motion of the original complainants to dismiss their bill.

The Third Cross Assignment of Error. We complain of the ruling of the court that this case stood for trial *de novo* unaffected by the law of the case and the ruling and opinion of this court. The authorities which we have

elaborately reviewed in the foregoing brief, are conclusive on this point.

The Fourth Cross Assignment of Error is really a restatement in another way of the third assignment.

The Fifth Cross Assignment submits that the court erred in permitting the heirs-at-law of H. R. Jenkins, deceased, as cross complainants to amend their original answer and cross bill, as shown by the decree permitting said amendment. We have already argued to this court that the alleged cross bill of the Jenkins heirs is nothing more than a defensive answer, and not a cross bill, and that our motion to strike the same as a cross bill should have been sustained. We submit again that the only purpose of this alleged amendment is to raise a big hue and cry about this being a different case from that considered by the court on the first appeal. We have a right to invoke the decision of the court as to whether the amendment should be allowed in order that we may try this case unembarrassed by any unjust claim that a different case is presented by the pleadings. We do not challenge the fundamental right of a chancery court to permit an amendment to the pleadings when proper or necessary. This amendment was not necessary and was improperly granted.

The Sixth Cross Assignment of Error submits that the court erred in refusing to make a final disposition of this cause in accordance with the former opinion and in granting an appeal to settle the principles of the case. We respectfully submit that all of the principles of this case have been settled, and that this court is now called upon to do what it has already done. The principles have been settled. Upon the whole record Pennington is entitled to recover and a decree should be entered here confirming his title to the lands as prayed for in his cross bill.

We think the parties are in the same attitude now before this court as the plaintiff and defendant in a court of law when both invoke a peremptory instruction. In

so doing, they submit the whole case to the court for final determination as a question of law. We think justice demands a final determination of this case on this appeal. If we are mistaken in our contention that the court should enter a final judgment on all the issues, then certainly we cannot be mistaken in asking the court finally to adjudicate again that Pennington's trust deed was and is valid, that it is a first lien, and that a final decree will be entered here so adjudging, and expressly limiting the issue to be retried on the affirmance and remand of the case again. The whole case is back here, in our judgment, for a final determination. Appellants do not ask the privilege of introducing any new testimony. It is interesting to note in this connection that counsel for appellants relied in the court below on *Middleton* v. *Davis,* 105 Miss. 152. By their application to dismiss, appellants are in the attitude of asking the court to make a final disposition of the case. In other words, the bill should be dismissed with prejudice, and a final decree entered on the cross bill in Pennington's favor. If the court doubts its power to enter that final decree here, then we ask that the court write an opinion declaring that Pennington is entitled to this final relief and simply remand the case with explicit directions to the chancery court to enter the decree down there.

We respectfully submit that we have shown upon the authorities that appellants did not have any right to dismiss their bill without prejudice and that the action of the court in overruling the motion to dismiss was right.

We submit that we have further shown to the court that the learned chancellor erred in refusing to strike the alleged cross bill of the Jenkins heirs from the files, in his ruling, in denying our counter-motion for a final judgment on the record; in his ruling allowing the Jenkins heirs to amend their bill when the amendment was not necessary or proper, and furthermore, that all of the cross assignments of error are well taken and should be sustained by this court.

There is an ancient legal maxim that—"No one shall be twice harassed for the same cause," and, furthermore, that there should be a speedy end to litigation.

SYKES, P. J., delivered the opinion of the court.

The People's Bank of Sumner, J. W. and G. C. Jenkins in their original bill claimed that the bank held a deed of trust superior to that of the two complainants Jenkins, and also to that of the defendant Pennington, on a certain tract of land. The bill further alleged that Pennington's deed of trust was void because it had been fraudulently altered. Pennington claimed in his answer and cross-bill that his deed of trust was superior to both of those held by complainants and denied any fraudulent alteration. The cause was heard in the chancery court on pleadings and proof, and a decree was there entered in favor of the complainants. An appeal was prosecuted to this court, and the decree of the lower court was reversed and the cause remanded. For former opinion see 132 Miss. 23, 95 So. 694. The court, in effect, held that Pennington had the first deed of trust on the land, and that there was no fraudulent alteration.

After the cause was reversed and remanded, the defendant Howard R. Jenkins died, and his heirs were made parties to the suit. The complainants jointly, and then each one separately, filed a motion to be allowed to dismiss their original bill, which motion was overruled by the court. The heirs of Howard R. Jenkins then filed answers and a cross-bill to the cross-bill of Pennington. This was objected to by Pennington. From the order denying the complainants the right to dismiss their original bill this appeal is here prosecuted, and Pennington prosecutes his cross-bill from the action of the court in allowing the answers and cross-bills of the heirs of Howard R. Jenkins to be filed.

The court was correct in allowing the heirs of Jenkins to file an answer and cross-bill. The cause was reversed

137 Miss.—43.

and remanded generally. Any party to the litigation, under these circumstances, has a right, with the leave of court, to file any pleadings or amendments thereto that he so desires.

In the case of *Haines* v. *Haines,* 98 Miss. 830, 54 So. 433, it is said:

"When a judgment or decree appealed from is by the supreme court reversed and remanded to the trial court, such court has full power to allow any amendment to be made to the pleadings, which it had power to allow before the judgment or decree appealed from was rendered.

"The remanding of a case to the trial court is for the purpose of having it tried *de novo,* and such a court has the same power to allow amendments to the pleadings, when a case is remanded with directions to enter a judgment or decree in accordance with the opinion of the supreme court, that it has when a cause is remanded without any such direction.

"If on the trial in the court below the pleadings and proof present the same case that was before the supreme court on appeal the judgment or decree of the court should be in accordance with the directions given by the supreme court, but should the pleadings and proof then present a different case, the judgment or decree should be made to conform thereto."

This rule is restated in the case of *Middleton* v. *Davis,* 105 Miss. 152, 62 So. 164. From this it follows that the chancellor was correct in allowing the heirs of Howard R. Jenkins to file appropriate answers and cross-bills.

In the case of *Adams* v. *Commercial Co.,* 113 Miss. 608, 74 So. 435, it was held that section 802 of the Code of 1906 (section 590, Hemingway's Code), which gives to every plaintiff the right to suffer a nonsuit if he elects to do so, before the jury retire to consider its verdict, is likewise applicable to the right of a com-

plainant in the chancery court, and that a complainant has the right to dismiss his bill at any time before the cause is submitted to the chancellor for a decision upon its merits; that this is an absolute right of the complainant, and no discretion is vested in the chancellor when timely application is made. The only limitation recognized to this general rule as therein stated is when "the defendant has secured some right by the filing of the bill which would be destroyed by the dismissal of the bill."

This rule above announced was in no way modified by the opinion of the court in the case of *Northern* v. *Scruggs,* 118 Miss. 353, 79 So. 227. On the contrary, part of the Adams opinion is quoted with approval in the Scruggs Case. The bill in the Scruggs Case expressly stated that the land had not been properly sold under the deed of trust and that the defendants had an interest in the land.

In the case of *State* v. *Hemingway,* 69 Miss. 491, 10 So. 576, it was held that the defendants "had acquired rights by what had occurred which entitled them to object successfully . . . to a dismissal." Also in the Scruggs Case is this quotation from *Coopers* v. *Lewis,* 2 Phil. Ch. 131:

"The plaintiff is allowed to dismiss his bill on the assumption that it leaves the defendant in the same position that he would have stood if the suit had not been instituted; it is not so when there has been a proceeding in the cause which has given the defendant a right against the plaintiff."

Tested by these rules, the defendant Pennington in this cause secured no rights by the filing of the bill. All of his rights are expressly denied in the bill. In this court the case was reversed and remanded generally; no directions whatever were contained in the mandate. Consequently, at the time of the application of the complainants to dismiss their original bill all rights affirmed by one side in the pleadings were denied by the other. No

rights whatever because of the pleadings had been acquired by Pennington.

It is suggested in the briefs that, because of the death of one of the defendants, certain testimony may not be admissible if the complainants be permitted to dismiss their original bill. This contention, however, has nothing to do with the legal question before us. We therefore conclude that the complainants as a matter of right are entitled to dismiss their bill in this cause.

*Reversed in part, and affirmed in part.*

On suggestion of error. Suggestion or error sustained in part and cause affirmed.

For former opinion, see 102 So. 386.

*Hays, Stingily & Whitten, Cutrer & Smith* and *May,. Sanders & McLaurin,* on suggestion of error for appellants.

The issues involved on the suggestion of error are exactly those involved on the appeal and cross appeal. The briefs filed duplicate those already filed. The question were on the appeal, and here they are: On direct appeal, when a case has been reversed and remanded generally, has the complainant the right to dismiss his bill? On the cross appeal, when a case has been reversed and remanded generally, have the parties the right to amend their pleadings and introduce such other evidence as may be available? Or to condense both into the one real, vital question, is the case triable *de novo?* A proper determination of the question settles every issue that can be raised with any show of reason. The answer to both is found in our cases, from the 4th Howard, and through a number of cases, cited below, and ending in 105 Mississippi. "When a judgment or decree appealed from is by this court reversed and remanded to the trial court, such court has full power to allow any amendment before the judgment or decree appealed from was rendered. The remanding of a case to the trial court is for to be made to the pleadings which it had power to allow

the purpose of having it tried *de novo,* and such a court has the same power to allow amendments to the pleadings, when a cause is remanded with directions to enter a judgment or decree in accordance with the opinion of this court that it has when a cause is remanded without any such direction. (Mandate in the pending case was without instructions.) If on the trial in the court below the pleadings and proof present the same case that was before this court on appeal, the judgment or decree of the court should be in accordance with the directions given it by this court; but should the pleadings and proof then present a different case, the judgment or decree should be made to conform thereto." *Haynes* v. *Haynes,* 98 Miss. 839 and cases cited; *Middleton* v. *Davis,* 105 Miss. 152; *Harris* v. *Newman,* 5 How. 653; *Hansard* v. *Gray,* 46 Miss. 75; *Wilkinson* v. *Sommers,* 15 So. 130; *Burroughs* v. *Vance,* 75 Miss. 606.

"The only limitation of the rule is applied where the defendant has acquired some right by the filing of the bill which would be destroyed by the dismissal of the bill." *Adams* v. *Commercial Co.,* 113 Miss. 608; *Northern* v. *Scruggs,* 118 Miss. 353.

So far as property rights are concerned, Mr. Pennington, of course, will take a decree against the People's Bank on the cross bill he filed. He could do no more if the Bank was still a party complainant. He loses nothing. So far as the testimony of Pennington is concerned, the estate of H. R. Jenkins is primarily concerned, and even if the Bank is still a party, he could not testify to establish his claim against the estate. True, he could testify against the Bank, but to no purpose, for he gets his decree without it.

The court, in effect, is now being in this suggestion of error, and on appeal to settle principles, to amend the decree rendered on an appeal at another term on the merits, and have the court to render a final decree in favor of Pennington. We take it that, if that ought to have been done, it would have been done by the judges

who rendered the decision on the merits. We do not think the court has jurisdiction to alter the judgment rendered on the merits even if there were any sound or appealing reason for it.

The appeal is to settle principles, but the principles are as to a complainant's right, guaranteed by statute and about to be taken away, to dismiss his bill, and the defendant's right to amend their answer, not as to what this court meant by a former decision on the merits. That speaks rather plainly for itself. We understood that opinion thoroughly. Whatever the court thought of this case on the appeal on its merits, the case was reversed generally. The mandate governs. That simply reversed and remanded the case for further proceedings.

We submit our former briefs, which are fuller, on this hearing.

*Wells, Stevens & Jones* and *H. C. Mounger,* on suggestion of error for appellee.

The opinion is dead wrong and the result is highly inequitable. Learned counsel for the appellants cited no case which supports the opinion as rendered. The court seems to overlook the fact that the application here is to dismiss without prejudice. The very purpose of the application is to accomplish indirectly what the People's Bank was unable to accomplish directly. That is to say, to overturn, do away with, and get rid of an unfavorable opinion of this court. It is undenied that the lower court on the first trial and this court on appeal, considered this case on full pleadings and proof; that this court considered the testimony as well as the pleadings and settled every fundamental question of law and fact adversely to the People's Bank, except the one question as to the due date or maturity of Pennington's trust deed. The court could not have reversed this case without considering the facts. This cause, therefore, had been submitted to the court for a final decision, and had passed the stage when

complainant, as a matter of right, could dismiss his bill. The fact that the court did rule on the facts as well as the pleadings is admitted in the following statement of Mr. Justice SYKES, when he says: "The court, in effect, held that Pennington had the first deed of trust on the land and that there was no fraudulent alteration."

Appellants, as complainants in the court below, no longer had the right to dismiss their bill, and their motion was properly overruled. We respectfully ask this court to review afresh the authorities which we submitted (beginning page fourteen of our former brief) on the concrete question as to the right of the complainants to dismiss their bill. We have always believed that the case of *Adams* v. *Commercial Co.,* 113 Miss. 608, was decided wrong. The opinion was by Mr. Justice SAM C. COOK, concurred in by the present Chief Justice. Or, in other words, it represents, or is supposed to represent, at least, the views of two judges and only two. But without attacking that opinion in the slightest way and accepting it as a binding precedent, the case at bar falls squarely within the limitation expressed by Judge SAM C. COOK in that opinion. This limitation was commented upon and the authorities referred to in the subsequent case of *Northern* v. *Scruggs,* 118 Miss. 353, which case is directly in point and which case was followed by Chancellor LOMAX in denying the application to dismiss.

The cause at bar was submitted to the chancellor for a decision upon its merits, and was submitted to the supreme court for a decision upon its merits, and the court has dealt with the facts as well as with the law. Depositions were taken before the case was ever tried, and these depositions constitute a part of the record and under our system of chancery procedure, could be introduced by either party and were, in fact, introduced in the cause fully submitted to the chancellor. We confidently assert that no decision can be found which holds that a complainant in equity has a right to dismiss his

bill after the supreme court has heard the whole case on
pleadings and proof, and settled all of the fundamental
law of the case.  On the contrary, such a result is
expressly condemned by every text book writer on
Chancery Pleading and Practice, and by great Jurists,
both state and Federal.  For emphasis, let us quote
two or three expressions from the following leading
authorities:  Mr. Daniel, Ch. Pl. & Pr.; *Cooper* v.
*Lewis,* 2 Phill. Chan. 181; *State* v. *Hemingway,* 69 Miss.
491; *Pullman Palace Car Company case; Ohio & A. R.
R. Co.* v. *Rolling Mill Co.,* 109 U. S. —, 27 L. Ed. 1081;
*Bank* v. *Rose,* 1 Rich. Eq. 294; *Conner* v. *Drake,* 1 Ohio
170; *Watt* v. *Craft,* 11 Paige 472; *Hollingsworth Vose
Co.* v. *Foxboro Water Supply District,* 171 Mass. 451.

The foregoing authorities are only a few of those
arrayed in our former brief without a dissenting voice.
We stand, therefore, upon precedent, and we confidently
assert the well-known limitation which this court
expressly recognized in *Adams* v. *Commercial Company,*
in *State* v. *Hemingway,* and in *Northern* v. *Scruggs.*
The Mississippi cases just referred to are conclusive
and fully support the action of Chancellor LOMAX in
denying the application.  The exception itself is recog-
nized by Mr. Justice SYKES.

The supreme court by the former appeal expressly
ruled on pleadings and proof that Pennington had a
first deed of trust.  This ruling of the court on the facts
was both a ruling of law and fact.  Primarily, the
ruling was similar to the granting of a peremptory in-
struction in a law court.  It must be assumed that in
the first trial all evidence which either party could
produce, was introduced and considered by the court.
A majority of the court, sitting *en banc,* expressly ruled
that the facts were insufficient to show that Pennington
had altered the record or that his trust deed was
subordinate to that of the People's Bank, and that the

records must be held to speak the truth. The case, however, was remanded for one reason and one reason alone.

Even if we be mistaken in our contention that the issue should be confined on a retrial of the case, yet we cannot be mistaken in the general proposition that so long as the pleadings and proof remain the same, the former opinion of this court was determinative of every issue except the one issue as to the maturity of Pennington's trust deed, and we cannot, therefore, be mistaken in assuming and contending to this court that Pennington had acquired an advantage by the very opinion of this court and that he should not now be robbed of that advantage by a dismissal without prejudice. A dismissal without prejudice wipes out the whole litigation and wipes out the opinion of this court, and places the litigants and attorneys in the position of having accomplished nothing. When this case was rendered Pennington's cross bill was still pending with a prayer to have his title confirmed, the depositions were on file subject to be introduced as a part of the evidence in this cause, and the case had been set down for trial by the learned chancellor, and parties and witnesses and attorneys were all present before the court. Looking at the situation, therefore, from the most technical or the strictest viewpoint, or, in other words, applying section 802, Code of 1906 (sec. 590, Hemingway's Code), and the decision of this court in *Adams* v. *Commercial Company,* the complainants, even then, had no right to dismiss the bill without prejudice. This is illustrated conclusively by the law action of *Schaffer* v. *Deemer Mfg. Co.,* 108 Miss. 257, a case which we did not cite or present to the court in our original brief. In that case the plaintiff sued to recover damages for injuries, and the cause proceeded to trial and—"at the close of the plaintiff's evidence the court on motion of the defendant, excluded it from the jury and granted the defendant a peremptory instruction." Before the jury retired

to consider any verdict, and before any verdict was written out on behalf of the plaintiff, the plaintiff moved for a non-suit. In the Schaffer case the evidence was all in and the defendant took the position that the evidence was insufficient. In the case at bar, the evidence was all in and Pennington took the position that the evidence was insufficient.

It will be noted that our court quoted from the case of *Washburn* v. *Allen,* 77 Me. 344, and directed attention to an interesting review of the history of the common-law rule upon the subject of non-suit. If, therefore, this court, under the rule in *Adams* v. *Commercial Company,* is to abolish all distinction between law actions and equity causes so far as the right to dismiss is concerned, then, by the same token we have a right to rely upon the decisions of this court in a law action, and the Schaffer case shows conclusively that Pennington was entitled to a peremptory instruction, and the supreme court of Mississippi has so declared. This declaration was binding upon the chancellor, and Pennington had scored a victory which the lower court could not possibly deny him. In this situation and conscious of defeat, the complainants walked in and moved the court to dismiss. In the language of the statute, a plaintiff desiring to suffer a non-suit—"shall be barred therefrom unless he do so before the jury retire to consider of its verdict." The chancellor is the jury. He considered his verdict. The judges of the supreme court sit in an equity case as reviewing chancellors. They have considered the verdict. The time for dismissal has elapsed.

Assuming solely for argument that the court is right and we are wrong on the fundamental question of dismissal, then certainly upon the dismissal Pennington should be accorded the right to retain his cross bill and proceed with the present suit thereon.

If this cause is dismissed without prejudice then the question of the force and effect of the former opinion is

left in doubt to be subsequently litigated at great expense and delay. The general rule is that a dismissal without prejudice wipes out the whole lawsuit together with all opinions, judgments, or decrees rendered in the cause on the hearing, and leaves the parties *in statu quo.* 15 R. C. L., pars. 431, and 456.

In the opinion of Judge Sykes is the following statement: ''No rights whatever because of the pleadings have been acquired by Pennington.'' We wonder what all this litigation has been about and why the learned and long opinion of Mr. Justice Ethridge speaking for the court *en banc.* This expression in the opinion ignores the fact that the cause was submitted on the proof. 2 R. C. L. 238; *State* v. *Richardson,* 40 Ore. 309, 8 L. R. A. (N. S.) 362.

''A dismissal by agreement will not bar a subsequent proceeding in another court.'' *State Medical Board* v. *Stewart* (Wash.), 11 L. R. A. (N. S.) 557; *Strehlau* v. *John Schraeder Lumber Co.,* 152 Wis. 589, 48 L. R. A. (N. S.) 464; *Harrison* v. *Remington Paper Co.,* 140 Fed. 385, 3 L. R. A. (N. S.) 954; *First National Bank* v. *Duncan,* 80 Kan. 196, 28 L. R. A. (N. S.) 327; see, also, 30 L. R. A. (N. S.) 377 and note.

Assuming that we are correct in our argument that the original bill should not be dismissed without prejudice or even assuming that we have a right, as we know we have, to retain the cross bill and proceed with the present suit, then we submit that the cross appeal should prevail in several particulars. In the first place, the heirs of Jenkins came in and undertook to file an alleged cross bill. The pleading which they filed is not in fact a cross bill, and this court is in error in declaring that they have a right to file a cross bill. We did not get to the point of contesting their cross bill or having the court to decide anything except to overrule our motion to strike it from the files. Any effort here to present a cross bill on behalf of the heirs of Jenkins is simply a movement in

harmony with the plan of the original complainants to step down and out and let Pennington on his cross bill and the heirs of Jenkins on their cross bill, become the actors in this litigation. This is a tactful move to embarrass Pennington in the matter of competency of evidence and otherwise. No reason is offered why the Bank should be permitted to dismiss without a final decree against it.

Argued orally by *J. Morgan Stevens* and *H. C. Mounger,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

On a former day the court considered this cause and reversed in part and affirmed in part the action of the court below, reversing the chancellor on his refusal to allow the complainants to dismiss their bill without prejudice. 102 So. 386.

A suggestion of error has been filed, and the court has reconsidered the cause, and we have reached the conclusion that we erred in reversing the chancellor on his refusal to allow the bill to be dismissed without prejudice.

The former opinion said:

"No rights whatever because of the pleadings had been acquired by Pennington.

"It is suggested in the briefs that, because of the death of one of the defendants, certain testimony may not be admissible if the complainants be permitted to dismiss their original bill. This contention, however, has nothing to do with the legal question before us."

It will be seen that we were then of the opinion that the rights gained or lost in the former proceeding must be such as are contained in the pleadings of the case, and therein we erred.

In the case of *Adams* v. *Commercial Co.,* 113 Miss. 608, 74 So. 435, the court reached the conclusion that section 802, Code of 1906, Hemingway's Code, section 590, was

applicable also to the chancery court, and it was there held that the only limitation of the rule is applied to causes wherein the defendant has secured some right by the filing of the bill which would be destroyed by the dismissal of the bill, and even then it is not a matter of discretion with the chancellor; it is a right of the defendant which controls.

In *Schaffer* v. *Deemer Manufacturing Co.,* 108 Miss. 257, 66 So. 736, the court held that a nonsuit at law could not be taken after the trial judge had granted the peremptory instruction, using the following language:

"To permit a party to dismiss under such circumstances is, in substance, to grant him a new trial after he has been fairly defeated, and to deprive his adversary of the fruits of a fairly won victory. It is contrary to good sense and sound policy to allow a party to take his case from one court to another until fortune favors him with a judge who is willing to accept his view of the law or his construction of the evidence. "Such a mode of proceeding would,' as was said in *Conner* v. *Drake,* 1 Ohio St. 166, 170, 'be trifling with the court as well as with the rights of defendants.' One who is defending against a claim which he believes to be unjust ought not to be subjected to the expense of litigation which settles nothing. And since he is not permitted to choose another forum when it is discovered that the court is against him, it is manifestly unfair to give the plaintiff an unlimited freedom of choice"—citing *Bee Building Co.* v. *Dalton,* 68 Neb. 38, 93 N. W. 930, 4 Ann. Cas. 508.

In *State* v. *Hemingway,* 69 Miss. 491, 10 So. 575, 576, at page 506 of the Mississippi Report, the court said:

"Testimony had been taken in the cause, and a stipulation had been entered into between the solicitors on both sides as to certain matters of fact to be considered as proved, and certain letters and official reports were agreed to be received in evidence. Much of this agreed testimony relates to the inquiry on which bond liability

is chargeable. The case had been heard by the chancellor, who, on the 14th of March, 1891, made a decree adjudicating that the conveyance is valid and enforceable in behalf of the state, but primarily for the exoneration of the sureties on the two bonds; that Hemingway was entitled to homestead exemption, and that sale should be made of the property embraced in the conveyance on certain terms (included in which was the consent of the Attorney General), and the net proceeds should be paid into the state treasury, with certain other matters relating to the administration of the trust property not necessary to be mentioned. The attack made by the bill on the conveyance had failed. Its prayer to enforce the conveyance as a security for the state was granted.

"The question where the liability, as between the two sets of sureties, should fall, was left open, with a reservation to the court of the right to do justice between them by final apportionment of the proceeds of the trust property according to their rights upon adjustment of the respective liabilities. The decree made March 14, 1891, was based on, and could be justified only on, the assumption of a final decree, ascertaining where among the sureties liability is. The requisite parties were before the court; the trust property was in its possession; a decree had been made adjudicating the chief matter of controversy, and directing payment of money into the state treasury; testimony by depositions and agreements had been taken and filed; the cause had been set for final hearing, after the expiration of the time allowed for taking testimony, and it was too late to dismiss the parts of the bill proposed and allowed. The defendants had acquired rights by what had occurred which entitled them to object successfully, at that stage of the suit, to a dismissal.

"The decree already made in the cause, required, as its complement, a further decree on the very matters as to which the bill was dismissed, without which that de-

cree could not stand.  It had been made, and the defendants were interested in its maintenance.  In such a condition of things, it is not allowable for the complainant to dismiss against the objection of the other parties.  The cases to this effect are numerous.  *Seymour* v. *Jerome,* Walker's Ch. (Mich.) 356; *Watt* v. *Crawford,* 11 Paige's Ch. (N. Y.) 470; *Cozzens* v. *Sisson,* 5 Rhode I. Rep. 489; *Bank* v. *Rose,* 1 Rich. Eq. (S. C.) 292; *C. & A. R. R. Co.* v. *Union R. M.,* 109 U. S. 702 [27 L. Ed. 1081.], which last case contains an extensive review of authorities on the subject, English and American.  All seem to agree that, in the stage at which this case was when the dismissal occurred, it was not allowable to dismiss without the consent of all concerned.''

In the case of *C. & A. R. R. Co.* v. *Union Rolling Mill Co.,* 109 U. S. 702, 3 S. Ct. 594, 27 L. Ed. 1081, the United States supreme court discussed the case fully, which case was cited in the case of *State* v. *Hemingway, supra,* by our court with approval.  In that case the United States supreme court (109 U. S. 713, 714, 3 S. Ct. 601, 27 L. Ed. at pages 1085, 1086) said:

"It may also be conceded that, as a general rule, a complainant in an original bill has the right, at any time upon payment of costs, to dismiss his bill.  But this latter rule is subject to a distinct and well settled exception, namely:  That after a decree, whether final or interlocutory, has been made, by which the rights of a party defendant have been adjudicated, or such proceedings have been taken as entitle the defendant to a decree, the complainant will not be allowed to discuss his bill without the consent of defendant.

''The rule is stated as follows in Daniel's Chancery Practice, p. 793 (5th Am. Ed.):  'After a decree or decretal order the court will not allow a plaintiff to dismiss his own bill, unless upon consent, for all parties are interested in a decree, and any party may take such steps as he may be advised to have the effect of it.'

"The same writer, page 794, says that, 'After a decree has been made, of such a kind that other persons besides the parties on the record are interested in the prosecution of it, neither the plaintiff nor defendant, on the consent of the other, can obtain an order for the dismissal of the bill.'

"The rule, as we have stated it, is sustained by many adjudicated cases. It was laid down by the Lord Chancellor in *Cooper* v. *Lewis*, 2 Phill. Ch., 181, as follows: "The plaintiff is allowed to dismiss his bill on the assumption that it leaves the defendant in the same position as he would have stood if the suit had not been instituted; it is not so where there has been a proceeding in the cause which has given the defendant a right against the plaintiff.'

"In *Bank* v. *Rose*, 1 Rich. Eq. (S. C.) 294, it was said: 'But whenever, in the progress of a cause, the defendant entitles himself to a decree, either against the complainant or a co-defendant, and the dismissal would put him to the expense and trouble of bringing a new suit or making new proofs, such dismissal will not be permitted.'

"So in the case of *Conner* v. *Drake*, 1 Ohio St. 170, the supreme court of Ohio declared: 'The propriety of permitting a claimant to dismiss his bill is a matter within the sound discretion of the court, which discretion is to be exercised with reference to the rights of both parties, as well the defendant as the complainant. After a defendant has been put to trouble in making his defense, if in the progress of the case rights have been manifested that he is entitled to claim and which are valuable to him, it would be unjust to deprive him of them merely because the complainant might come to the conclusion that it would be for his interests to dismiss his bill. Such a mode of proceeding would be trifling with the court as well as with the rights of defendants.' "

In the former appeal of the case before us in 132 Miss. 23, 95 So. 694, the facts as then developed were fully set

forth. At page 33 of the Mississippi Report the court held that the chancellor was not warranted by the evidence in finding that the People's Bank's deed of trust was a prior one and that of Pennington was a secondary one or subordinate to that of the People's Bank or G. C. and J. W. Jenkins. The court further held that all of the documents in evidence, including the recordation of the instruments, showed that Pennington's deed of trust had priority and that Pennington had a first lien on the land. The court further held that the evidence did not show that Mr. Rowland, the cashier of the People's Bank, who had the deeds of trust recorded, was the agent of Pennington, but held that the evidence showed that Mr. Rowland was the agent of the bank. In other words, the court then found on the record before it for Pennington in several important and decisive particulars and announced the law of the case which it would be the duty on a new trial of the court below to follow. It left open for determination the question as to whether the deed of trust given to Pennington by H. R. and Elizabeth Jenkins matured in 1921 or in 1926. It is true that the judgment of the court and the mandate thereof contained no specific directions and was generally reversed and remanded.

Since the decision of the court in 132 Miss. 23, 95 So. 694, referred to, one of the complainants and cross-defendants, Howard R. Jenkins, has died, and both Howard R. Jenkins and Ben T. Pennington testified in the former case. The case had been tried in the court below, judgment of the chancellor rendered, appeal taken to this court, and judgment of this court obtained on the controversy as it then stood in its most vital particulars. By these proceedings Pennington acquired important rights. To permit a dismissal of the bill without prejudice now would certainly be to deprive him of important rights which he has obtained.

The defendants to the cross-bill filed by Pennington are in possession of the property upon which the deed

of trust was given. The deed of trust had been foreclosed by Pennington prior to the filing of his cross-bill, and by his cross-bill he sought to obtain possession of the land involved.

The People's Bank, G. C. Jenkins, J. W. Jenkins, and H. R. Jenkins and Elizabeth Jenkins, were complainants to the original bill and set forth their contentions therein and had answered the allegations of Pennington's cross-bill. Since H. R. Jenkins has died, his heirs stand in his place in the suit. It is important to all of the parties that the rights of both Pennington and of the Jenkinses be settled. Their rights are so interrelated with the rights of the People's Bank and with the bank's claims that it would be difficult to proceed without having the whole issue determined in one cause. It might be a vital thing to Pennington's rights or claims to be deprived of his own testimony, and we think it would be unfair and unjust and contrary to the general public policy of having litigation settled to permit a dismissal of the bill without prejudice which would or might have the effect of changing the strategical position of the parties.

On the cross-appeal the appellants, of course, would be permitted to make such amendments as might be necessary to secure their rights, provided such amendments do not change the scope and purpose of the lawsuit. The appeal being for the purpose of settling principles, we do not undertake to decide precisely whether the pleadings filed are exactly what they should be. We leave that matter to be passed upon by the chancellor in the light of what we have said in our former opinions as well as in this opinion.

The suggestion of error will therefore be sustained to the extent indicated, and the judgment on both direct and cross appeals affirmed.

*Suggestion of error sustained in part and cause affirmed.*